UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRUMBULL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16-CV-01139 AGF |
| | ) | |
| JOHN H. MALLETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This action for declaratory judgment regarding underinsured motorist ("UIM") coverage is before the Court on the motion (ECF No. 18) for summary judgment filed by Plaintiff Trumbull Insurance Company as to both Defendants, and the cross motion (ECF No. 41) for summary judgment filed by Defendant John H. Mallett ("John Mallett" or "Defendant"). The other Defendant in this case, Kelly Williams, is in default and has not responded to Plaintiff's motion. For the reasons set forth below, the Court will grant Plaintiff's motion and deny Defendant's motion.

## BACKGROUND

For the purpose of the motions before the Court, the facts as established by the record are as follows. On August 15, 2015, while driving a 1991 Jeep Cherokee Laredo, Decedent Duell Mallett ("Decedent") was killed in a motor vehicle accident. The accident was caused by the negligence of another driver, Justin Williams (the "Other Driver"). Decedent was survived by Defendants John Mallett and Kelly Williams, his

only surviving children. John Mallett also serves as the personal representative of the estate of Decedent.

The Other Driver had automobile liability insurance at the time of the accident, and Defendants brought a claim against him and his insurance provider. The Other Driver's insurance provider offered to pay its policy limit of $25,000, though the parties disagree as to whether this amount was actually paid. Defendants also submitted a claim for UIM coverage against Decedent's insurance provider, Plaintiff Trumbull Insurance Company.

At the time of the accident, Decedent had three vehicles insured by Plaintiff under policy number 84 PH 928689. The declarations page of the policy, which lists the "Coverages and Limits of Liability," states that "Underinsured Motorists Bodily Injury" coverage has a liability limit of $500,000 for each person and $1,000,000 for each accident. After Defendants received their $25,000 policy-limit settlement offer from the Other Driver's insurance provider, Plaintiff offered to pay Defendants UIM benefits of $500,000, declaring that the per-person limit was the maximum amount of the policy's UIM coverage in this case.

Defendants accepted the $500,000 pursuant to a "Special Release," which preserved Defendants' right to pursue a claim to "stack" the UIM coverage benefits under Decedent's policy. In this instance, stacking would allow Defendants to combine the UIM coverage of $500,000 for each vehicle on the policy for a total of $1,500,000. The Special Release also set forth Plaintiff's position that the policy did not allow for such

"stacking," and Plaintiff reserved its right to "file or remove any litigation" to federal court related to any stacking claim Defendants might bring. ECF No. 20 at 64.

On July 14, 2016, Plaintiff filed its complaint for declaratory judgment in this Court, invoking the Court's diversity jurisdiction. Plaintiff requests that this Court declare that the insurance policy in question provides no right to stack UIM coverage. In the alternative, if the Court determines stacking is allowed by the insurance contract, Plaintiff seeks a declaration that it is entitled to an offset for the amounts already paid to Defendants by both Plaintiff and the Other Driver's insurance provider. In his answer, Defendant requests that this Court declare that there is a right to stack UIM coverage under the subject policy.

Plaintiff filed its motion for summary judgment with supporting memorandum on February 10, 2017. Defendant thereafter filed a motion to compel Plaintiff to produce any correspondence sent to Decedent regarding the subject policy. In its response to that motion, Plaintiff represented that, other than the policies issued to Decedent, it did not possess any communications between it and Decedent. On July 6, 2017, the Court denied Defendant's motion to compel and ordered Defendant to respond to Plaintiff's motion for summary judgment.

Defendant filed a combined response to Plaintiff's motion and cross motion for summary judgment on July 11, 2017. Plaintiff filed a combined response and reply on August 11, 2017. Defendant has not filed a reply in support of his motion for summary judgment, and the time to do so has passed.

The other Defendant in this case, Kelly Williams, has not appeared in this matter since the Clerk's entry of default against her on entered on February 13, 2017.[1]

### THE INSURANCE POLICY

The relevant language of the subject insurance policy is contained in the endorsement to the policy regarding UIM coverage (Endorsement A-6193-0) and provides as follows:

**LIMIT OF LIABILITY**

**A.** The Limit Of Liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for each person, the Limit Of Liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A,** Part **B** or Part **C** of this policy.

---

[1] Plaintiff filed a motion for default judgment against Kelly Williams on February 2, 2017, seeking the same declaratory relief that it seeks in the instant motion for summary judgment. To avoid inconsistent results, the Court denied Plaintiff's motion for default judgment without prejudice to refiling after the claim against the similarly-situated non-defaulting Defendant, John Mallett, was resolved. ECF No. 45.

4

> **C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

ECF No. 20 at 28.

## **ARGUMENTS OF THE PARTIES**

Plaintiff argues that there is no right to stack UIM coverage under the subject policy. According to Plaintiff, there is no statutory requirement in Missouri that drivers carry UIM coverage. Instead, Plaintiff argues that the existence and amount of UIM coverage are determined by the insurance contract between the provider and the insured, which must be enforced as written, unless ambiguous. Here, according to Plaintiff, the insurance contract unambiguously prohibits stacking. In support of this argument, Plaintiff cites a case decided by the United States Court of Appeals for the Eighth Circuit, *Midwestern Indemnity Co. v. Brooks*, 779 F.3d 540 (8th Cir. 2015) ("*Brooks*"), which applied Missouri law and held that policy language identical to the language in the "Limit of Liability" section excerpted above unambiguously prohibited stacking.

Defendant argues that the policy as a whole is ambiguous and should be interpreted in his favor to allow stacking. Defendant does not dispute that the relevant language in the policy's "Limit of Liability" section is identical to the policy language at issue in *Brooks*, or that this language, when viewed alone, clearly prohibits stacking. But Defendant argues that language found elsewhere in the policy renders the entire insurance policy ambiguous. Specifically, Defendant cites the undefined term "duplicate payments" referred to throughout the policy as a source of ambiguity, as well as a section of the original policy entitled "General Provisions, Underinsured Motorists Coverage."

5

ECF No. 42 at 4-5. Defendant also argues that a number of the policy's internal cross-references, which require the insured to "flip[ ] back and forth" between the policy and the endorsements thereto, render the policy "confusing and ambiguous." ECF No. 42 at 4.

Finally, Defendant contends that Plaintiff's failure to produce any correspondence between itself and Decedent should give rise to an "adverse inference . . . presuming that Plaintiff did not provide [Decedent] with a copy of the subject insurance policy or any documentation regarding the insurance coverage." ECF No. 42 at 7. Defendant argues that this presumption further warrants the denial of summary judgment in Plaintiff's favor and the entry of summary judgment in his favor.

## **DISCUSSION**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007). The movant is entitled to summary judgment when the non-movant has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the unresolved issues are primarily

legal rather than factual, summary judgment is particularly appropriate." *Eichenwald v. Small*, 321 F.3d 733, 736 (8th Cir. 2003).

**<u>Stacking</u>**

"Interpretation of an insurance policy is a matter of state law." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (citation omitted). When deciding matters governed by state law, federal courts sitting in diversity are "bound by the decisions of the state's highest court," and when deciding issues not yet addressed by the state's highest court, federal courts should consult analogous cases, decisions by lower courts, and "other potentially elucidating state law materials." *Eichenwald*, 321 F.3d at 736.

"'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009). "As a matter of public policy, Missouri courts have invalidated attempts by insurance companies to prohibit the stacking of *uninsured* motorist coverage. But because Missouri does not require UIM coverage, the existence of the coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer." *Brooks*, 779 F.3d at 545 (internal quotations and citations omitted).

"Under Missouri law, general rules of contract construction apply when interpreting an insurance policy." *Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743

7

F.3d 1128, 1131 (8th Cir. 2014) (citing *Todd v. Mo. United Sch. Ins. Council,* 223 S.W.3d 156, 160 (Mo. 2007)). Policy provisions are not to be considered in isolation; rather, courts are to consider policies in their entirety. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 133 (Mo. 2007). "In construing an insurance policy, we apply the meaning that would be attached by an ordinary person of average understanding." *Corrigan v. Progressive Ins. Co.*, 411 S.W.3d 306, 311 (Mo. Ct. App. 2013) (citing *Ritchie*, 307 S.W.3d at 135).

Where policy language is unambiguous, it is to be enforced as written. *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. 1991). "However, if the policy is ambiguous as to stacking, [Missouri courts] will construe the policy in favor of the insured and allow stacking." *Corrigan,* 411 S.W.3d at 311 (citing *Ritchie*, 307 S.W.3d at 135). "A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy." *Rodriguez*, 808 S.W.2d at 382. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010). "[I]f a contract promises something at one point and takes it away at another, there is an ambiguity." *Seeck*, 212 S.W.3d at 133 (citation omitted).

Here, Defendant has failed to establish that the policy is ambiguous as to stacking. Defendant agrees with Plaintiff that the anti-stacking provision in the Limit of Liability section cited above clearly prohibits stacking. As the Eighth Circuit explained in *Brooks* regarding language identical to the provision at issue here, where there is a provision that

8

clearly prohibits stacking, "[t]he plain language of that anti-stacking provision must be offset by another provision 'appear[ing] to *authorize* stacking'" in order to create an ambiguity. *Brooks,* 779 F.3d at 545 (citation omitted). Defendant has not identified another provision that could be construed as appearing to authorize stacking.

Defendant points to a section of the original policy entitled "Part F – General Provisions – Underinsured Motorists Coverage," which states as follows:

> If the Underinsured Motorists Coverage Endorsement is attached to this policy, the provisions of the Underinsured Motorists Coverage Endorsement apply except as follows . . . (B) Paragraph B of the Limit of Liability Provision does not apply.

ECF No. 20 at 61.[2]

Defendant argues that "[a]lthough it is not clear, one would assume that the Paragraph B referred to is Paragraph B of the endorsement, which states that 'no one will be entitled to receive duplicate payments for the same elements of loss under Part A, Part B, or Part C of this policy." ECF No. 42 at 5. Defendant then contends that "[t]he plain meaning of that would be understood by the common policy owner reading it to mean that duplicative payment, or 'stacking' is allowed." *Id.*

There are at least two problems with Defendant's argument. First, the provision of the original policy that Defendant cites as creating the ambiguity was expressly deleted

---

[2] Defendant states that this language appears on page 17 of the original policy. However, the copy of the original policy submitted by Plaintiff as an exhibit to its statement of uncontroverted material facts (ECF No. 20), the authenticity of which Defendant has not disputed (ECF No. 41 at 2, ¶ 8), contains the quoted language on page 28.

9

by a later endorsement (Endorsement A-6037-4). ECF No. 20 at 22 ("Part F – Underinsured Motorists Coverage is deleted.").

Second, even if the provision were not deleted, Defendant has failed to assert, nor can the Court discern, how this provision, or any other that contains the term "duplicate payments" might be construed to *authorize* stacking, as required to create an ambiguity in light of the policy's plain anti-stacking language. *See Brooks*, 779 F.3d at 546. Read together, Part A of the UIM coverage endorsement's "Limit of Liability" prohibits stacking of UIM coverage, Part B prohibits duplicate recovery for the same item of loss, and Part C prohibits duplicate payment for an element of loss already made by or on behalf of a person who is legally responsible for the loss. *See Staufenbiel v. Amica Mut. Ins. Co.*, No. 4:13-CV-2571-JAR, 2015 WL 1456987, at *5 (E.D. Mo. Mar. 30, 2015) (holding that identical policy language was not ambiguous). None authorizes stacking.

The Court also finds unpersuasive Defendant's additional argument, that having to flip back and forth between the policy and the endorsements renders the policy ambiguous. Defendant does not suggest that the policy's cross-references authorize stacking, and the Court finds that they do not counter the Limit of Liability provision's anti-stacking mandate.

**<u>Decedent's Receipt of a Copy of the Policy</u>**

Defendant's alternative argument, that the Court should draw an "adverse inference" and presume that Plaintiff never delivered a copy of the insurance policy to Decedent, is puzzling and, in any event, without merit. As an initial matter, Defendant does not explain how his requested adverse inference would support his claim. Nor has

he presented any argument or caselaw suggesting that Plaintiff's alleged failure to deliver a copy of the policy to Decedent would somehow eliminate any limitation of liability.

In any event, in response to Defendant's cross-motion, Plaintiff submitted the affidavit of Deborah Holmes, an employee in Plaintiff's underwriting department whose scope of duties includes "knowledge of the mailing procedures of [Plaintiff] for policies of insurance." ECF No. 46-1 at 3. Holmes attests that Plaintiff's regular course of business is to mail, with proper postage through the United States Postal Service, a copy of a policy to the insured at the address listed on the policy, and that, pursuant to this regular practice, a copy of the policy at issue would have been mailed to Decedent at the address listed on his policy immediately after the policy was issued. ECF No. 46-1.

Defendant has not disputed that the address listed on the policy was in fact Decedent's address, and Defendant has failed to provide any evidence contradicting Plaintiff's evidence as to delivery of the policy to Decedent. *See Davis v. U.S. Bancorp*, 383 F.3d 761, 766 (8th Cir. 2004) ("We apply a presumption that a properly mailed document is received by the addressee. That presumption may arise based on circumstantial evidence, including testimony by someone familiar with company procedures and practices that the letter was sent.") (citations omitted); *Shelter Mut. Ins. Co. v. Flint*, 837 S.W.2d 524, 528 (Mo. Ct. App. 1992) (holding that "[w]hen the customary volume of mail is large, so that direct proof that a particular letter was mailed is not feasible, evidence of the settled custom and usage of the sender in the regular and systematic transaction of its business is sufficient to give rise to the presumption of receipt by the addressee," and that a response by the insureds that they did not receive a

11

copy of an insurance policy did not dispel the presumption of receipt arising from the insurer's evidence of mailing). Thus, the Court will deny Defendant's request for an adverse inference.

## **CONCLUSION**

For the reasons set forth above, the Court will grant Plaintiff's motion for summary judgment as to Defendant John Mallett and as to Defendant Kelly Williams, who is in default.

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is **GRANTED** as to both Defendants. ECF No. 18.

**IT IS FURTHER ORDERED** that Defendant John H. Mallett's cross motion for summary judgment is **DENIED**. ECF No. 41.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 5th day of September, 2017.